Cook Alciati (to be admitted *pro hac vice*)
Email: calciati@ga-iplaw.com
Greg H. Gardella (to be admitted *pro hac vice*)
Email: ggardella@ga-iplaw.com
GARDELLA ALCIATI
80 M Street SE, 1st Floor
Washington, DC 20003
Telephone: (703) 721-8379
Facsimile: (703) 740-4541

Stephen M. Lobbin (SBN 181195)
Email: sml@smlavvocati.com
SML Avvocati P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
Telephone: (949) 636-1391

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

|  |  |
|---|---|
| DUZY IOD LLC d/b/a DUZYTV, a Domestic Limited Liability Company<br><br>    Plaintiff,<br><br>    v.<br><br>BYTEDANCE LTD., a Cayman Islands company; TIKTOK LTD., a Cayman Islands company; TIKTOK INC., a California corporation,<br><br>    Defendants. | C.A. No. 2:25-cv-04909<br><br>**COMPLAINT FOR PATENT INFRINGEMENT AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT

Plaintiff DUZY IOD LLC d/b/a DuzyTV ("DuzyTV" or "Duzy") files this Complaint for patent infringement and breach of contract, as well as its demand for jury trial, against Defendants ByteDance Ltd., TikTok Ltd., and TikTok Inc. d/b/a TikTok, and alleges as follows.  Pursuant to L.R. 8-1, the statutory basis for the exercise of jurisdiction by this Court includes 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over patent actions).

## **OVERVIEW**

1.      Duzy developed the disruptive technology that enables users to buy a product featured in or related to a video from within the video itself. Prior to Duzy's development of this technology, social media operators including TikTok struggled unsuccessfully to develop a workable solution. One of Duzy's early solutions is shown below.



2.      Unable to develop a workable solution on its own, TikTok asked Duzy to demonstrate its solution and explain how the platform was constructed and configured. Under a non-disclosure agreement, Duzy disclosed this information to Blake Chandlee, TikTok's President of Global Business Solutions, and others at TikTok in January 2021.

1

COMPLAINT

3.      In January and February 2021, TikTok's representatives asked many detailed technical questions, largely concerning how Duzy's technology was able to connect multiple retailers (e.g., eBay, Shopify, and Walmart) into a single video platform and how the user interface (UI) and user experience (UX) should be architected in TikTok's platform. It was apparent that TikTok was still actively struggling to find solutions to these problems. During a series of videoconferences, subject to the same non-disclosure agreement, Duzy showed TikTok how to construct the UI and design the UX to TikTok's environment, and how to architect the multi-vendor solution to effectively host product offers from multiple different vendors.

4.      In March 2021, TikTok's representative Hadley Mouritzen informed Duzy that TikTok intended to use Duzy's service to power TikTok's shopping experience. Throughout March and April 2021, Ms. Mouritzen and Duzy had a series of meetings to further discuss the prospective business relationship.

5.      In late May 2021, Ms. Mouritzen indicated in a phone call that TikTok might be going in a different direction. She indicated that TikTok was not seeing a "clear path" as to how TikTok and Duzy would work together on this project. Ms. Mouritzen also indicated that TikTok might decide to code their own solution, but it was not clear what features and technology that TikTok-coded solution would incorporate.

6.      In early June 2021, after Duzy questioned how TikTok could proceed without Duzy because Duzy's technology was patented, Ms. Mouritzen referred the matter to TikTok's patent counsel and ceased further communication with Duzy.

7.      On August 24, 2021, TikTok and Shopify presented a copy-cat version of Duzy's technology. A screenshot from the announcement is reproduced below. Clicking the circled shopping icon launches the in-video shopping window, just like in Duzy's prototype shown to TikTok. In the announcement, TikTok's Blake Chandlee is quoted as saying "[o]ur [TikTok's] community has transformed shopping into an

experience that's rooted in discovery, connection, and entertainment, creating unparalleled opportunities for brands to capture consumers' attention." Ex. C at 2.



*Id.* at 1.

8.     On information and belief, TikTok also presented this copy-cat technology to Walmart in August 2021. On information and belief, TikTok similarly represented to Walmart that TikTok developed this technology in-house. TikTok's Walmart implementation incorporated the same Duzy-proprietary information discussed above.

9.     TikTok breached its non-disclosure agreement with Duzy and has been, and is, willfully infringing Duzy's patent.

## NATURE OF THE ACTION

10.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., including 35 U.S.C. § 271, which gives rise to the remedies specified under 35 U.S.C. §§ 281 and 283-285 and also for breach of contract for Defendants' breach of a non-disclosure agreement dated September 17, 2020.

COMPLAINT

1

## THE PARTIES

2      11.    Duzy is a domestic New Jersey Limited Liability Corporation with its

3 principal place of business at 30B Vreeland Road, Florham Park, New Jersey 07932.

4      12.    Duzy is a video commerce pioneer. Duzy has innovated DuzyIOD™

5 which is a video player solution that allows users to sell, search and buy products

6 while watching a video. This solution is a transactional video platform that

7 conveniently combines content with commerce to create an immersive shoppable

8 experience. Duzy's products are targeted for businesses such as TikTok and other

9 video streaming and e-commerce platforms.

10     13.    Even though Duzy is a small company, Duzy was able to generate

11 substantial revenue by providing its services (based on the technology described

12 above) to various e-commerce clients. Duzy also was under contract with major

13 providers like Vivendi (which owns Universal Music Group) and eBay. Prior to the

14 misappropriation of its technology by TikTok, Duzy was also in active negotiations

15 with numerous other potential customers, many of which were large multinational

16 corporations.

17     14.    In all conversations with those potential customers, Duzy insisted on

18 nondisclosure agreements as additional confidential and proprietary information

19 would be disclosed in addition to the disclosures in the patents.

20     15.    On information and belief, Defendant TikTok Inc. is a California

21 corporation with its principal place of business at 5800 Bristol Parkway, Suite 100,

22 Culver City, California 90230. TikTok Inc. transacts or has transacted business in this

23 District and throughout the United States.

24     16.    On information and belief, Defendant TikTok Ltd. is a Cayman Island

25 LLC with its principal place of business shared with TikTok Inc. On information and

26 belief, TikTok Ltd. transacts or has transacted business in this District and throughout

27 the United States.

28

COMPLAINT

17.     Defendant ByteDance Ltd. is a Cayman Islands company. It has had offices in the United States and in other countries. On information and belief, ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

18.     TikTok Inc., through its streaming service, TikTok (hereinafter "TikTok App" or "Accused System"), provides a mobile software application that millions of Americans, including many in this judicial district, use to create and share short videos composed of expressive content. TikTok attracts millions of U.S. viewers and users by offering a disparate array of video content including a diverse community of families, small businesses, and creators who seek to attract viewers and subscribers and, in many cases, to offer and advertise products for sale. TikTok allows its community of creators to reach millions of people, across generations, to communicate on topics, from music, food, beauty, and fashion to art, causes, and everything in between. The TikTok App is free to download. It generates revenue for Defendants through advertising and eCommerce, including through the TikTok for Business platform, as well as in-app purchases of TikTok "coin" through the TikTok Shop.

19.     Defendants have operated as a common enterprise while engaging in the unlawful acts and practices alleged below.

## JURISDICTION AND VENUE

20.     This is a complaint including causes of action for patent infringement arising under 35 U.S.C. § 271, *et seq.* This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over patent actions).

21.     This Court has subject matter jurisdiction over Duzy's breach of contract claims under 28 U.S.C. § 1332. Specifically, Duzy and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

22.     This Court also has supplemental jurisdiction over Duzy's breach of contract under 28 U.S.C. § 1367.

23.     This Court has general personal jurisdiction over Defendants, at least because Defendants, on information and belief, are foreign and domestic corporations that have committed acts of patent infringement in this State and District, and Defendants regularly conduct business, solicit business, and/or derive substantial revenue from products and/or services provided within this State, including products that infringe Duzy's patented technology.

24.     The Court has personal jurisdiction over Defendants because: with regard to the Breach of Contract Action, Defendants have agreed to jurisdiction and venue in this Court; and Defendants are also present within or have minimum contacts within the District; Defendants have purposefully availed themselves of the privileges of conducting business in the District; Defendants have sought protection and benefit from the laws of the State of California; Defendants regularly conduct business within the State of California and the District; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of California and the District.

25.     More specifically, on information and belief, Defendants, directly and/or through intermediaries, made, had made, used, imported, provided, supplied, distributed, sold, and/or offered for sale products and services in the United States, the State of California, and the Central District of California, including but not limited to the TikTok App as detailed below. Defendants, thus, have distributors, partners, and paying customers who are residents of the State of California, and the Central District of California, and who each use and have used the Defendants' infringing products and services in the State of California and in this District.

26.     Venue is proper in this judicial district against Defendant Tik Tok Inc. pursuant to 28 U.S.C. § 1400(b) because Tik Tok Inc. has an established place of business in this District and has committed acts of infringement in this District and

additionally is a California corporation. Moreover, Section 14 of the non-disclosure agreement ("NDA") between Duzy and Tik Tok Inc. states that "[e]ach of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Los Angeles County, California, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of the federal or state courts located in Los Angeles County, California such personal jurisdiction will be non-exclusive." A copy of the NDA is attached hereto as Ex. B at 3.

27.     Venue is proper as to foreign defendants ByteDance Ltd. and Tik Tok Ltd. under 28 U.S.C. § 1391(c)(3).

## THE PATENT-IN-SUIT

28.     U.S. Patent No. 10,334,320 (hereinafter "the '320 patent" or "patent-in-suit"), titled "Interactive Digital Platform, System and Method for Immersive Consumer Interaction with Open Web Video Player" was duly and legally issued by the United States Patent and Trademark Office on June 25, 2019. Duzy is the owner of the '320 patent, with all substantial rights, including the exclusive right to enforce, sue, and recover damages for past and future infringements. A copy of the '320 patent is attached as Exhibit A.

29.     The '320 patent underwent *ex parte* reexamination and was issued a Reexamination Certificate on February 22, 2021. A copy of the Reexamination Certificate is included at the end of Exhibit A.

## DUZY'S PIONEERING TECHNOLOGY

30.     The patent-in-suit represents pioneering work by the named inventor, Peter L. Chesson. Duzy has developed what is colloquially referred to as "shoppable video" such that any standard video or video player can be adapted and customized with an Application Programming Interface ("API") overlay which, when properly coded and implemented, will run simultaneously with, and independently of (and

appear integrated into), a video stream without disrupting that video. Thus, the viewer will have the ability to purchase a thing directly from the video while watching it – which was heralded as a highly-desirable and extraordinary development.

31.    Duzy's invention allows any consumer to enter into an interactive online purchase transaction in what appears to them to be inside the video while the video continues to play without interruption.

32.    In 2017, Mr. Chesson founded Duzy to provide marketing solutions to streaming video services and solve the problem of in-stream commerce, also known as "shoppable video".

33.    Duzy's shoppable video innovation solved a long-felt need in the video streaming industry. Specifically, while the social media generation utilizes TikTok as its main source of interaction, networking and socializing there was no convenient way for a user to shop while watching a video. If the user left the video, TikTok would not necessarily be able to recapture the user's attention, and less time on the app means less advertising revenue for TikTok. Duzy's inventions ensure that TikTok advertisers can sell products in a way that does not divert eyeballs away from TikTok. This is extremely valuable to a company with TikTok's business model.

34.    TikTok Inc.'s representative(s) informed Duzy that TikTok Inc.'s sister company Douyin had been unsuccessfully working to develop and enhance this capability prior to meeting and learning about Duzy. For instance, Ms. Mouritzen expressly indicated that Douyin and TikTok Inc. "had not figured out the user experience yet" or how to accommodate multiple vendors or payment methods. Duzy had the solutions, demonstrated the feasibility and the efficiency, and taught these solutions to TikTok Inc. The timeline of this interaction is set out below.

## **DUZY TEACHES TIKTOK ITS INNOVATIVE TECHNOLOGY**

35.     In or about early-to-mid 2020, Duzy was introduced to TikTok Inc. On information and belief, TikTok Inc. learned of Duzy's technology and recognized its value to the TikTok App. TikTok Inc. was eager for a path to further monetize its video content. Representatives from TikTok's U.S. operations contacted Duzy to explore developing a relationship to incorporate Duzy's pioneering technology into the TikTok App.

36.     On information and belief, prior to 2020, TikTok Inc. had been working to develop and make functional an API overlay that could incorporate offerings to allow users to shop for products sponsored by TikTok vendors without having to exit the TikTok App or video the user was watching. TikTok had tasked its sister company, Douyin, which upon information and belief develops all software for the U.S. TikTok entities, to create the software to enable this technology. Prior to meeting with Duzy, Douyin and TikTok Inc. had been unsuccessful in accomplishing this programming challenge.

37.     The discussions between TikTok and Duzy progressed, culminating in the written NDA on or about September 17, 2020, signed by Mr. Chesson on behalf of Duzy and by Blake Chandlee, VP of TikTok Inc. *See* Ex. B.

38.     In January of 2021, following increasing interest and enthusiasm about a partnership, Duzy coded a customized solution with an all-U.S. based team and explained to TikTok how to implement it into TikTok's video environment with partners like Shopify.

39.     Operating under the NDA and the proposed collaboration, Duzy disclosed confidential and proprietary information, solutions, protocols and methodologies to TikTok under the NDA.

40. For example, on or about February 2021, Mr. Chesson communicated with TikTok's Hadley Mouritzen to set out in detail what Duzy had been working on to offer to TikTok. Through licensing, and in collaboration between Duzy and TikTok, Duzy would, among other things, create and integrate its proprietary and patented technology to create and integrate new shopping platforms to allow online in-video shopping for TikTok's users from a range of vendors.

Düzy/TikTok  External  Inbox ×

PJ Chesson <pj@duzytv.com>                                                                              Thu, Feb 25, 2021, 11:59 AM
to Hadley, Tom

Hi Hadley,

I hope this finds you well. Below we've outlined how we see potentially working with TikTok from a tech and business perspective.

Tech-

1. Duzy is an aggregator of many different e-commerce engines. We save you the effort of integrating new shopping platforms and provide a uniform API for buying via video.
2. Duzy provides the back office tooling to allow many different offers to be applied to a single stream or many streams.
3. Duzy provides as much granular control over the promotion as the influencer needs. We don't utilize the video to "guess" what items should be sold.
4. Duzy's metrics engine provides the foundation for targeting highly successful offers and allows for rapid, real time switching between offers.
5. Duzy's back office provides the framework for a marketplace for influencers who may not have products already available for sale.
6. Duzy is stable, at launch product status and fully deployed in the AWS cloud.
7. Duzy's commerce checkout processes are anonymous, fully GDPR and CCPA compliant and have a limited PCI scope.
8. Duzy allows integration with new payment gateways, all of which are bundled under our uniform API.

Business-

1. Duzy is open to a "hands free" enterprise license agreement, under which TikTok would:

    - Have a whitelable version of the Duzy back office site which can be rebranded TikTok.
    - Make the code available to TikTok and potentially branch and manage the code directly if desired.
    - Access to all APIS for the back office tools and the player API's to enable video commerce.
    - Full access to the AWS instances for operational control.
    - Intellectual property license.

2. Duzy is open to a dual-responsibility model as well where Duzy would take a more active role in commerce platform integrations, API maintenance, and API updates.

    - Duzy would spin off the instances of our system to create a dedicated tikTok instance.
    - Duzy would maintain and support the code, conduct releases, testing and provide feature updates in partnership with TikTok.
    - Duzy would manage the AWS instances and provide all DevOps support.
    - Governed under the Duzy EULA; TikTok users would have access to the Duzy back office system for creating promotions on their streams.

I look forward to reconnecting soon and please know we would love to work with you guys and I hope I have clearly articulated the value we offer and that the relationship described above is something we can work towards.

Sincerely,

PJ Chesson
CEO/Founder

COMPLAINT

41.    The talks between Duzy and TikTok continued as evidenced by the email exchange below with Ms. Mouritzen.



42.    About this time, Duzy continued to refine the proof-of-concept presentations and repeatedly demonstrated the efficacy and value of its technology to TikTok. These presentations include information from Duzy's patents, as well as confidential information covered by the NDA which disclosed the protocol for the shoppable video technology. For example, during a series of videoconferences, Duzy showed TikTok how to construct the UI, design the UX, and configure its servers to effectively host product offers from multiple different vendors.

43.    All during this time, Duzy continued to communicate with TikTok and received several assurances that TikTok was prepared to implement its technology into the TikTok App.

44.    By April 2021, TikTok was preparing to enter into formal agreements with Duzy to integrate Duzy's technology into the TikTok App. These commitments

COMPLAINT

are reflected in the following examples of emails exchanged between the companies'
representatives.



COMPLAINT

45.    In fact, based on these discussions, on or about May 10, 2021, Duzy issued an investor letter informing its investors about the imminent deal with TikTok.



46.    Shortly after this time, later in May 2021, when Ms. Mouritzen returned from a vacation, the tenor of communications with TikTok changed. Contrary to the clear intentions to collaborate set forth in Ms. Mouritzen's earlier emails, and her repeated oral assurances, TikTok denied interest in any arrangement with Duzy. In a May 21, 2021 email, Ms. Mouritzen disclaimed her earlier positive acknowledgments of making a deal with Duzy.



13                                                          COMPLAINT

47.     This sudden turn about by TikTok came as a complete surprise to Duzy. Mr. Chesson wrote to Ms. Mouritzen shortly thereafter expressing his surprise.



48.     In June 2021, the communications with TikTok's business representatives ceased. In fact, the communications ceased coming from Ms. Mouritzen at TikTok and were taken over by TikTok lawyer and patent counsel, Alex Chen.

49.     On August 24, 2021, TikTok and Shopify presented a copy-cat version of Duzy's technology. A screenshot from the announcement is reproduced below. Clicking the circled shopping icon launches the in-video shopping window, just like in Duzy prototype shown to TikTok. In the announcement, TikTok's Blake Chandlee is quoted as saying "[o]ur [TikTok's] community has transformed shopping into an experience that's rooted in discovery, connection, and entertainment, creating unparalleled opportunities for brands to capture consumers' attention." Ex. C at 2.



*Id.* at 1.

50.     On information and belief, TikTok also presented this copy-cat technology to Walmart in August 2021. On information and belief, TikTok similarly represented to Walmart that TikTok developed this technology in-house. TikTok's Walmart implementation incorporated the same Duzy-proprietary information discussed above.

51.     On information and belief, TikTok could not have achieved this programming capability, nor obtain the necessary API overlays without wrongfully disclosing Duzy's confidential and proprietary information in violation of the NDA.

**COUNT ONE**
**BREACH OF THE NDA BY DEFENDANTS**

52.     Duzy incorporates by reference the allegations in paragraphs 1-51 as if fully set forth herein.

53.     The terms of that NDA were clear, and read in relevant part: "Recipient [TikTok] shall not (a) use any Confidential Information except to the extent necessary for the purpose described below the signatures to this Agreement (the "Purpose"); or (b) disclose any Confidential Information to any third party, except as such disclosure is expressly permitted in this Agreement." Ex. B at 1.

COMPLAINT

54. During the meetings and discussions between Duzy and the Defendants during 2020-2021, it was clear to Duzy that TikTok did not possess the technology to launch the shoppable video API overlay successfully and efficiently. TikTok's representatives asked Duzy many detailed technical questions, largely concerning how Duzy was able to connect multiple retailers (e.g., Shopify and Walmart) into a single video platform and how the user interface (UI) and user experience (UX) were designed. It was apparent that TikTok was still actively struggling to find solutions to these problems. During a series of videoconferences, Duzy showed TikTok how to construct the UI, design the UX, and configure its servers to effectively host product offers from multiple different vendors. All of this constituted Duzy's confidential information under the NDA, which TikTok has misused in violation of the NDA.

55. Just months after receiving Duzy's confidential and proprietary information, TikTok remarkably was offering this technology to third parties such as Walmart and other product vendors that are now integrated into the TikTok videos.

56. On information and belief, the Defendants used Duzy's confidential and proprietary information provided to TikTok under NDA to create a copy-cat version of Duzy's solution. It was this copy-cat version that was commercially introduced through collaborations with Shopify and Walmart.

57. The above conduct by the Defendants constitutes a breach of the NDA terms and representations by the Defendants, all of which was done to the detriment of and causing harm to Duzy.

58. The full extent of Defendants' harm and damage to Duzy is not presently known to Duzy. Duzy makes this preliminary identification of Defendants' wrongful conduct in Count One without the benefit of discovery in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

COMPLAINT

59.    Duzy also reserves the right to amend this claim for damages after discovery is conducted and the full extent of the harm caused by the Defendants' wrongful conduct can be ascertained.

## COUNT TWO
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 10,334,320

60.    Duzy incorporates by reference the allegations in paragraphs 1-59 as if fully set forth herein.

61.    On information and belief, Defendants have infringed directly or indirectly and are infringing at least claim 1 of the '320 patent at least by importing, making, using, selling, importing and/or offering to sell the TikTok App. For example, Defendants have used the infringing technology for their own purposes at least to test their accused system.

62.    The TikTok App meets all the limitations of at least claim 1 of the '320 patent. Claim 1 of the '320 patent is representative of the claims infringed by Defendants and recites:

1.    A video player comprising at least one processing device and a screen controlled by software when executed by the at least one processing device that generates a video stream displayed on said screen

and configured to generate a user interface wherein said at least one processing device and software is further configured to enable end viewers to interact with cue objects pre-enabled within said video stream displayed on said screen,

wherein said pre-enablement occurs in, and by configuring, a fully independent video overlay, wherein said configuring is defined through an editing platform that enables the video player controlling software to be provided with enhanced functionality by configuring interactive content modules in the fully independent video overlay wherein said fully independent video overlay is defined by products or services made available by API keys that link said products or services via a commerce platform API,

wherein implementation of the overlay is carried out through an embedded player deployed via code to a media partners platform to integrate the fully independent video overlay within the video player and

associate it to the cue object in the video player independent of the video stream,

wherein said fully independent video overlay is timeline detached,

said video player further limited wherein: said at least one processing device and software is further configured to stream said fully independent video overlay to allow particular images within said video stream displayed on the screen to be chosen and pre-enabled as cue objects for viewer interaction at any point in time while a viewer is viewing the video stream wherein said overlay allows said viewer interaction without video stream disruption;

and said at least one processing device and software is further configured by configuring said fully independent video overlay to display at least one proprietary cue object on the screen that enables an end viewer to choose from interaction options comprising logging in, obtaining information about said at least one cue object, and purchasing said at least one cue object, at any point during video stream play,

enabled with an overlay API that comprises an interactive payment handler module configured to collect information, display cue objects, aggregate cue objects for purchase and perform the aggregate purchase transaction by using APIs within the viewing frame overlay on the video player,

and same implemented wholly within said video player and overlay, eliminating all direct, real-time linking or transfer of context, frame and/or control of said video player to any third party purveyor site; and said at least one processing device and software is further configured to display interactive icons on the screen enabling end viewers to choose from a menu of choices for interaction on demand;

and said at least one processing device and software is further configured to process any number of interactive content modules configurable by content creators and editors to provide end users customizable interactive options; and said at least one processing device and software is further configured to enable said video player to be implemented within existing third party website portals and applications.

Ex. A, Reexamination Certificate, claim 1.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

63.    The TikTok App's user interface enables the user to purchase an item and pay for it during the playing of a video stream on a device, which is demonstrated by the below representative screenshots from a current TikTok social medial platform as offered in the United States. When a user opens the TikTok App and scrolls among the videos, they are presented with the ability to shop for items marketed in those videos through API-enabled overlays such as demonstrated below:



COMPLAINT

1     64.    When the user clicks on the shopping cart icon, the TikTok App opens a

2 payment window that collects payment information for the purchase and performs the

3 purchase transaction. A screenshot of the interactive payment handler is shown below.



65.    The TikTok App includes a "video player comprising at least one

processing device and a screen controlled by software when executed by the at least

one processing device that generates a video stream displayed on said screen." In the

examples shown above, videos featuring a pool and a dog play on the user's device on

the TikTok App. The TikTok App is specifically designed and intended to be

COMPLAINT

1  deployed and operated on users' electronic devices, such as smartphones, which

2  include a screen controlled by software that generates the recited video stream.

3      66.    The TikTok App also includes "a video player . . . configured to generate

4  a user interface wherein said at least one processing device and software is further

5  configured to enable end viewers to interact with cue objects pre-enabled within said

6  video stream displayed on said screen." As shown and explained above, users click on

7  elements on screen (for instance, the shopping cart icon) displayed in a user interface

8  to view products, which in TikTok's implementation are related to the video content.

9  The clickable element (e.g., the shopping cart icon) appears within the video stream

10  and, upon being clicked, displays one or more cue objects (e.g., items that can be

11  purchased).

12     67.    In the TikTok App, the "pre-enablement occurs in, and by configuring, a

13  fully independent video overlay, wherein said configuring is defined through an

14  editing platform that enables the video player controlling software to be provided with

15  enhanced functionality by configuring interactive content modules in the fully

16  independent video overlay wherein said fully independent video overlay is defined by

17  products or services made available by API keys that link said products or services via

18  a commerce platform API." TikTok's App includes fully independent video overlay

19  that allows users to purchase products featured in the videos without interrupting the

20  video playback. The overlay is configured by TikTok and/or others via an editing

21  platform that allows the creation content modules that associate certain products to

22  certain videos. In the TikTok App, the video feeds are pre-configured to include the

23  shopping related clickable elements (e.g., the shopping cart and the small window

24  showing the pool cleaning device). API keys and content modules are used to link the

25  product information to the video feed. *See*

26  https://partner.tiktokshop.com/doc/page/63fd743d715d622a338c4e7e (legacy system)

27  and https://partner.tiktokshop.com/docv2/page/64f198f74830a5028854c106 (current

28

COMPLAINT

system), which indicates that TikTok Shop open APIs have been continuously used to integrate product information and offers into videos.

68.    In the TikTok App, the "implementation of the overlay is carried out through an embedded player deployed via code to a media partners platform to integrate the fully independent video overlay within the video player and associate it to the cue object in the video player independent of the video stream, wherein said fully independent video overlay is timeline detached." TikTok provides the media platform and serves as the media partner to e-commerce entities such as Shopify, Walmart or individual influencers using TikTok Shops. The video overlay is timeline detached at least because it is always accessible through the shopping cart icon.

69.    In the TikTok App, the "video player further limited wherein: said at least one processing device and software is further configured to stream said fully independent video overlay to allow particular images within said video stream displayed on the screen to be chosen and pre-enabled as cue objects for viewer interaction at any point in time while a viewer is viewing the video stream wherein said overlay allows said viewer interaction without video stream disruption." The TikTok App runs on a user's device and the shopping cart icon and overlay are preconfigured to be present and/or accessible throughout at least certain videos. The videos continue playing after the user clicks the shopping cart icon to view the product information overlay.

70.    In the TikTok App, "at least one processing device and software is further configured by configuring said fully independent video overlay to display at least one proprietary cue object on the screen that enables an end viewer to choose from interaction options comprising logging in, obtaining information about said at least one cue object, and purchasing said at least one cue object, at any point during video stream play." In the TikTok App, the user may click the shopping cart icon at any time during the video, in response to which the user is permitted to login (as necessary), view the product information, and purchase the product if desired.

71.     The TikTok App is "enabled with an overlay API that comprises an interactive payment handler module configured to collect information, display cue objects, aggregate cue objects for purchase and perform the aggregate purchase transaction by using APIs within the viewing frame overlay on the video player." As explained above, the TikTok App relies upon APIs to provide product information through a window. The user may select products and purchase those products via that same API-enabled interface.

72.     In the TikTok App, these features are "implemented wholly within said video player and overlay, eliminating all direct, real-time linking or transfer of context, frame and/or control of said video player to any third party purveyor site; and said at least one processing device and software is further configured to display interactive icons on the screen enabling end viewers to choose from a menu of choices for interaction on demand." As explained above, the shopping cart icon is implemented within the video player and the video continues playing after the shopping cart icon is clicked. The user can click the shopping cart icon at any time and decide whether to purchase the products shown in the overlay. The product viewing and purchasing requires no direct, real-time linking or transfer of context, frame or control of the video player which would, generally speaking, take the user outside of the TikTok App such as to Shopify to complete the purchase.

73.     In the TikTok App, "at least one processing device and software is further configured to process any number of interactive content modules configurable by content creators and editors to provide end users customizable interactive options; and said at least one processing device and software is further configured to enable said video player to be implemented within existing third party website portals and applications." The TikTok App offers products from multiple vendors on various multiple influencer channels or pages. TikTok customizes the menu icons and provides a system to enable content creators to customize the product window content. Software on the user's device allows TikTok videos to be embedded in third party

apps website portals, such as applications and websites of sports media and news outlets, influencers, Shopify store owners, retailers like Walmart, and the like.

74.    Defendants have known of the '320 patent since at least July 2021 when Duzy advised TikTok of its existence.

75.    At least since the date that Defendants learned of the '320 patent, Defendants' infringement has been deliberate and willful.

76.    On information and belief, Defendants were, at a minimum, willfully blind to the existence of the '320 patent, Defendants' infringement, as well as the infringement of their partners and others.

77.    Defendants have caused Plaintiff damage by direct infringement of the claims of the '320 patent.

78.    Defendants' infringement of the '320 patent has injured Duzy in its business and property rights, as well as significantly damaged its ability to form relationships with other vendors or sellers that would utilize the TikTok App. Duzy is entitled to recover monetary damages for the injuries arising from Defendants' infringement in an amount to be determined at trial.

79.    Defendants' infringement of the '320 patent has caused irreparable harm to Duzy and will continue to cause such harm unless and until Defendants' infringing activities are enjoined by this Court.

80.    Defendants continue to commit acts of infringement despite a high likelihood that their actions constitute infringement, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of the '320 patent. Defendants' continuing infringement of the '320 patent after the filing of this Complaint is particularly egregious.

81.    Defendants' infringement of the '320 patent is exceptional and entitles Duzy to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

COMPLAINT

82.    The full extent of Defendants' infringement is not presently known to Duzy. Duzy makes this preliminary identification of infringing products and/or services and infringed claims in Count Two without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

### COUNT THREE
### INDIRECT INFRINGEMENT OF U.S. PATENT NO. 10,334,320

83.    Duzy incorporates by reference the allegations in paragraphs 1-82 as if fully set forth herein.

84.    On information and belief, Defendants, with knowledge of the '320 patent, and without authority, have actively induced and continue to actively induce infringement of at least one claim of the '320 patent, under 35 U.S.C. § 271(b), by intentionally inducing the use, importation, offer for sale, and/or sale of the TikTok App, intending to encourage, and in fact encouraging, the direct infringement of the '320 patent. For example, by providing the app to its users, TikTok specifically intends that its users use the app in a way that infringes at least claim of the '320 patent.

85.    On information and belief, Defendants, with knowledge of the '320 patent, and without authority, have contributed to and continue to contribute to the infringement of the '320 patent by selling or importing within the United States at least a component of a patented system or an apparatus for use in practicing a patented process (e.g., the TikTok App) that constitutes a material part of the invention, knowing the same to be especially made or especially adapted for use in the infringement of the '320 patent and not a staple article or commodity of commerce suitable for substantial noninfringing use, in violation of 35 U.S.C. § 271(c).

COMPLAINT

86.     On information and belief, Defendants induced and/or contributed to infringement by, *inter alia*, introducing into the stream of commerce the TikTok App, and by publishing promotional literature describing and instructing in the operation of the TikTok App in an infringing manner, and by offering support and technical support that encourage use of the TikTok App in ways that infringe or cause the direct infringement the asserted claims of the patent-in-suit.

87.     Defendants have had knowledge of the '320 patent since at least July 2021 when Duzy informed TikTok of the existence of the '320 patent.

88.     In addition, Defendants have actual knowledge of the direct infringement Defendants have, and their acts induced and/or contributed to such no later than the filing of this Complaint.

89.     Defendants have caused Plaintiff damage by direct and/or indirect infringement of the claims of the '320 patent.

90.     Defendants' infringement of the '320 patent has injured Duzy in its business and property rights. Duzy is entitled to recover monetary damages for the injuries arising from Defendants' infringement in an amount to be determined at trial.

91.     Defendants' infringement of the '320 patent has caused irreparable harm to Duzy and will continue to cause such harm unless and until Defendants' infringing activities are enjoined by this Court.

92.     Defendants continue to commit acts of infringement despite a high likelihood that their actions constitute infringement, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of the '320 patent. Defendants' continuing infringement of the '320 patent after the filing of this Complaint is particularly egregious.

93.     Defendants' infringement of the '320 patent is exceptional and entitles Duzy to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

94.     The full extent of Defendants' infringement is not presently known to Duzy. Duzy makes this preliminary identification of infringing products and infringing claims in Count Three without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

## **PRAYER FOR RELIEF**

WHEREFORE, Duzy prays for the following judgments and relief:

(a)     A judgment that Defendants have breached the NDA with Duzy;

(b)     A further judgment that Defendants have infringed and are infringing the patent-in-suit;

(c)     A permanent injunction against Defendants and their affiliates, subsidiaries, distributors, resellers, e-tailers, assigns, employees, agents or anyone acting in privity or concert from infringing the patent-in-suit, including enjoining the importing, making, offering to sell, selling, using, or importing into the United States products claimed in any of the claims of the patent-in-suit; using or performing methods claimed in any of the claims of the patent-in-suit; inducing and/or contributing to others using and performing methods that infringe any claim of the patent-in-suit; or contributing to others using and performing methods that infringe any claim of the patent-in-suit, until the expiration of the patent-in-suit;

(d)     An award of damages adequate to compensate Duzy for Defendants' patent infringement, and an accounting to adequately compensate Duzy for the infringement, including, but not limited to, lost profits and/or a reasonable royalty;

(e)     An award of enhanced damages under 35 U.S.C. § 284 of treble damages based on the willful and deliberate nature of Defendants' infringement;

(f)     An award of pre-judgment and post-judgment interest at the maximum rate allowed by law;

COMPLAINT

(g)     An order finding that this is an exceptional case and awarding Duzy its costs, expenses, disbursements, and reasonable attorneys' fees related to Defendants' patent infringement under 35 U.S.C. § 285 and all other applicable statutes, rules and common law; and

(h)     Such other further relief, in law or equity, as this Court deems just and proper.

**JURY TRIAL**

In accordance with Rule 38 of the Federal Rules of Civil Procedure and L.R. 38-1, Duzy hereby demands a jury trial on all issues triable before a jury.

DATED this 30th day of May, 2025.

*/s/ Stephen M. Lobbin*

Stephen M. Lobbin (SBN 181195)
Email: sml@smlavvocati.com
SML Avvocati P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
Telephone: (949) 636-1391

Cook Alciati (to be admitted *pro hac vice*)
Email: calciati@ga-iplaw.com
Greg H. Gardella (to be admitted *pro hac vice*)
Email: ggardella@ga-iplaw.com
GARDELLA ALCIATI
80 M Street SE, 1st Floor
Washington D.C., 20003
Telephone: (703) 721-8379
Facsimile: (703) 740-4541

*Counsel for Plaintiff*
*DUZY IOD LLC*

COMPLAINT