# EXHIBIT B

**MUTUAL NON-DISCLOSURE AGREEMENT**

This Mutual Non-Disclosure Agreement (the "Agreement") is made and entered into, as of September 17, 2020 ("Effective Date"), by and between TikTok, Inc., having a principal place of business at 5800 Bristol Parkway, Culver City, CA 90230 and Düzy Iod LLC., having a principal place of business at 30B Vreeland Road, Suite 100, Florham Park, NJ 07932.

1.     Definition of Confidential Information. "Confidential Information" means (a) any information related to a party's business or current, future or proposed products or services, including for example and without limitation, each party's respective information concerning research, development, design details and specifications, financial information, procurement requirements, engineering and manufacturing information, customer lists, business forecasts, sales information and marketing plans and (b) any information a party has received from others that such party is obligated to treat as confidential or proprietary; provided that information disclosed by a party to this Agreement (the "Discloser") will be considered Confidential Information of Discloser by the other party (the "Recipient"), only if the information (i) is identified at the time of disclosure as "Confidential" (or with some other similar statement or legend) or (ii) should reasonably be understood to be confidential. The "Discloser" and the "Recipient" shall include each party's representatives, defined as its affiliates (an entity controlling, controlled by, or under common control of a party) and its and their directors, officers, employees, agents or advisors (including, without limitation, attorneys, accountants, consultants, and financial advisors).

2.     Nondisclosure Obligations and Use Restrictions.   Recipient shall not (a) use any Confidential Information except to the extent necessary for the purpose described below the signatures to this Agreement (the "Purpose"); or (b) disclose any Confidential Information to any third party, except as such disclosure is expressly permitted in this Agreement.  Furthermore, neither party may disclose the existence of any negotiations, discussions or consultations in progress between the parties to any third party without the prior written approval of the other party.  Recipient shall treat all of Discloser's Confidential Information with the same degree of care as Recipient accords to Recipient's own Confidential Information, but not less than reasonable care. Recipient shall disclose Discloser's Confidential Information only to those of Recipient's employees, consultants and contractors who need to know the information to assist Recipient with respect to the Purpose.  Recipient certifies that each of its employees, consultants and contractors will have agreed to be bound by terms and conditions at least as restrictive as those terms and conditions applicable to Recipient under this Agreement.  Recipient shall immediately give notice to Discloser of any unauthorized use or disclosure of Discloser's Confidential Information.  Recipient shall assist Discloser in remedying the unauthorized use or disclosure of Discloser's Confidential Information.

3.     Exceptions.  Recipient's obligations under Section 2 (Nondisclosure Obligations and Use Restrictions) shall not apply to any of Discloser's Confidential Information that Recipient can document: (a) was in the public domain at or subsequent to the time the Confidential Information was communicated to Recipient by Discloser through no fault of Recipient; (b) was rightfully in Recipient's possession free of any obligation of confidence at or subsequent to the time the Confidential Information was communicated to Recipient by the Discloser; or (c) was developed by or on behalf of Recipient independently of and without reference to any of Discloser's

Confidential Information.  A disclosure by Recipient of any of Discloser's Confidential Information (i) in response to a valid order by a court or other governmental body; (ii) as otherwise required by law; or (iii) necessary to establish its rights under this Agreement shall not be considered to be a breach of this Agreement by the Recipient; provided, however, that Recipient provides prompt prior written notice thereof to the Discloser to enable Discloser to seek a protective order or otherwise prevent the disclosure.

4.    Ownership.  All of Discloser's Confidential Information, and any Derivatives (defined below) thereof, whether created by the Discloser or Recipient, are the property of Discloser and no license or other rights to the Discloser's Confidential Information or Derivatives is granted or implied hereby.  For purposes of this Agreement, "Derivatives" shall mean: (a) for copyrightable or copyrighted material, any translation, abridgment, revision or other form in which an existing work may be recast, transformed or adapted; (b) for patentable or patented material, any improvement thereon; and (c) for material that is protected by trade secret, any new material derived from the existing trade secret material, including new material which may be protected under copyright, patent and/or trade secret laws.  Recipient hereby does and agrees to irrevocably assign to Discloser all of Recipient's rights, title in interest and interest in and to the Derivatives.  All materials (including, without limitation, documents, drawings, papers, diskettes, tapes, models, apparatus, sketches, designs and lists) furnished by Discloser to Recipient (whether or not they contain or disclose Discloser's Confidential Information) are the property of the Discloser.

5.    Return of Confidential Information and Other Materials.  Within five (5) days after any request by Discloser, Recipient shall destroy or deliver to Discloser, at Discloser's option, (a) all Discloser-furnished materials and (b) all materials in Recipient's possession or control (even if not Discloser-furnished) that contain or disclose any of the Discloser's Confidential Information. Recipient will provide Discloser a written certification of Recipient's compliance with Recipient's obligations under this Section.

6.    Independent Development.  Recipient may currently or in the future be developing information internally, or receiving information from other parties that may be similar to the Discloser's Confidential Information.  Accordingly, nothing in this Agreement will be construed as a representation or inference that Recipient will not develop or have developed products or services, that might compete with the products or systems contemplated by the Discloser's Confidential Information, provided that such activity does not violate this Agreement.

7.    Disclosure of Third Party Information.  Neither party shall communicate any information to the other in violation of the proprietary rights of any third party.

8.    No Warranty.  All Confidential Information and other materials are provided by Discloser "AS IS" and without any warranty, express, implied or otherwise, regarding the Confidential Information's completeness, accuracy or performance.

9.    Export.  Recipient will obtain any licenses or approvals the U.S. government or any agency thereof requires prior to exporting, directly or indirectly, any technical data acquired from Discloser pursuant to this Agreement or any product utilizing that data.

10.    Term and Termination.  This Agreement shall govern all information disclosed before, on or after the Effective Date.  Either party may terminate this Agreement upon written notice to the

DocuSign Envelope ID: D3466BA4-49F8-4400-AE14-1BD9ABC245D3

other party; provided, however, that a Recipient's obligations under Section 2 (Nondisclosure Obligations and Use Restrictions) will continue in perpetuity with respect to the Discloser's Confidential Information that the Recipient has previously received until the obligations no longer apply pursuant to Section 3 (Exceptions).  In addition, those provisions that by their nature should survive termination shall survive termination.

11.    <u>No Assignment</u>.  Neither party is permitted to assign or transfer any rights or delegate any performance under this Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld; provided that such consent shall not be required for the transfer of this Agreement in connection with a merger, acquisition, or other corporate combination, or the sale of all or substantially all of the transferor's assets, provided further that the transferee is not a direct competitor of the other party.  All assignments, transfers and delegations in violation of the foregoing are void.

12.    <u>Injunctive Relief</u>.  A breach by Recipient of this Agreement may cause irreparable and continuing damage to Discloser for which money damages are insufficient, and Discloser shall be entitled to seek injunctive relief and/or a decree for specific performance, and other relief as may be proper (including money damages if appropriate), without the need to post a bond.

13.    <u>Notices</u>.  Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated:  (a) by personal delivery, when delivered personally; (b) by overnight courier, upon written verification of receipt; (c) by or facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (d) by certified or registered mail, return receipt requested, upon verification of receipt.   Notice shall be sent to the addresses set forth above or to such other address as either party may provide in writing.

14.    <u>Governing Law; Forum</u>.  The laws of the United States of America and the State of California govern all matters arising out of or relating to this Agreement without giving effect to any conflict of law principles.  Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in Los Angeles County, California, as applicable, for any matter arising out of or relating to this Agreement, except that in actions seeking to enforce any order or any judgment of the federal or state courts located in Los Angeles County, California such personal jurisdiction will be non-exclusive.  Additionally, notwithstanding anything in the foregoing to the contrary, a claim for equitable relief arising out of or related to this Agreement may be brought in any court of competent jurisdiction.

15.    <u>Severability</u>.  If a court of law holds any provision of this Agreement to be illegal, invalid or unenforceable, (a) that provision shall be deemed amended to achieve an economic effect that is as near as possible to that provided by the original provision and (b) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby.

16.    <u>Waiver; Modification</u>.  If a party waives any term, provision or a party's breach of this Agreement, such waiver shall not be effective unless it is in writing and signed by the party against whom such waiver is asserted.  No waiver by a party of a breach of this Agreement by the other party shall constitute a waiver of any other or subsequent breach by such other party.  This Agreement may be modified only if authorized representatives of both parties consent in writing.

17.   <u>Entire Agreement</u>.  This Agreement constitutes the final and exclusive agreement between the parties with respect to the treatment of Confidential Information disclosed hereunder.  It supersedes all agreements, whether prior or contemporaneous, written or oral, concerning the treatment of the Confidential Information.


IN WITNESS WHEREOF, the parties agree to this Agreement.

**TikTok Inc.**

Signature: _Blake Chandlee_

Name: ___Blake Chandlee___

Title: ___Vice President___

Date: ___9/18/2020___

**Düzy Iod LLC.**

Signature: _PJ Chesson_

Name: ___PJ Chesson___

Title: ___CEO/Founder___

Date: ___9/18/2020___


Purpose:

- *To discuss a potential business transaction between the parties*